UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **KEVIN CONSTANTINE** | \* | **CIVIL ACTION NO. 12-3072** |
| **VERSUS** | \* | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | \* | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Kevin Constantine, born January 16, 1976, filed an application for disability insurance benefits and a period of disability on April 27, 2010, alleging disability as of April 21, 2010, due to back pain, neck problems and carpal tunnel syndrome.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability.

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence, based on the following:

**(1) Records from Dr. Daniel Hodges dated August 13, 2007 to April 27, 2010**. On August 13, 2007, claimant complained of neck and back pain, numbness, weakness, headaches and sleep deprivation. (Tr. 260-62). Dr. Cobb had performed lumbar surgery with internal hardware placement and bone grafting at L5-S1 in 2003. (Tr. 260). Claimant's pain improved, and he returned to work in 2005. However, his pain returned, and his disc problems had increased in the neck and back.

On cervical examination, range of motion was somewhat limited. (Tr. 262). Claimant had some tenderness in the trapezial levator groups, slight decreased pinprick over the ulnar distribution on the left hand and equivocally positive Tinel's. On low back examination, claimant had pain on a moderate degree of hyperextension, as well as during lateral bending and rotation.

Dr. Hodges' impression was a history of lumbar fusion in September, 2003, and escalating neck pain, rule out occult cervical radiculopathy. He was prescribed Lortab and Elavil. (Tr. 263).

Claimant continued to see Dr. Hodges for follow up on a regular basis. (Tr. 248-259). On December 17, 2008, he rated his neck, bilateral shoulder, bilateral arm, back, bilateral hip, left knee and bilateral leg pain at 10 on a scale of 0 to 10.

(Tr. 245). He also complained of associated numbness and weakness in his arms, hands and legs, headaches and difficulty in sleeping.

On examination, lumbar range of motion was diminished and forward flexion was limited. (Tr. 246). Dr. Hodges increased claimant's Lortab to 10 mg. (Tr. 247).

On January 21, 2010, claimant complained of neck pain radiating into the shoulders, and back pain radiating into the hips and legs. (Tr. 230). He stated that his symptoms were lasting 18 to 24 hours a day. He rated the pain at 10 on a scale of 0 to 10.

On examination, claimant's lumbar range of motion was diminished. (Tr. 231). He had significant paravertebral tenderness with some spasm.

Dr. Hodges' diagnosis was a history of L3-4 lumbar fusion with persistent acute and chronic arachnoidopathy with leg, low back and buttock pain. (Tr. 232). He discontinued claimant's Lortab and prescribed Norco.

On April 22, 2010, claimant complained of worsening neck, bilateral shoulder, bilateral arm, right hand, back, right hip and right knee pain. (Tr. 227). On examination, he had limited cervical spine range of motion, tenderness throughout the trapezial levator groups into the rhomboid musculature and equivocally positive Tinel's. (Tr. 228). Low back exam revealed restrictions

consistent with his previous fusion with paravertebral tenderness extending from L1 to L5.

Dr. Hodges' impression was rule-out occult cervical radiculopathy and/or entrapment neuropathy and history of L3-4 lumbar fusion with persistent mechanical back pain. (Tr. 229). He continued claimant's medication regime.

On April 27, 2010, claimant complained of persistent numbness in the upper extremities. (Tr. 279). The NCV Report showed bilateral median nerve entrapment neuropathy at the level of the carpal tunnel, right greater than left.

**(2) Report from Laborde Diagnostic Center dated May 6, 2010**. An MRI of the cervical spine showed a small right lateral focus disc herniation at C3-4 with no definite cord or nerve root compromise, and minor central spondylosis at C4-5, C5-6 and C6-7. (Tr. 268).

**(3) Report from Dr. Hodges dated May 17, 2010**. Claimant continued with neck, bilateral shoulder/arm/elbow/wrist/hand, back, bilateral hip, right knee, bilateral leg, right ankle and right foot pain. (Tr. 281). He rated his pain at 10 on a scale of 0 to 10. He also complained of associated numbness and weakness in the arms and legs and trouble falling asleep, averaging one to two hours per night.

On examination, claimant had some suboccipital tenderness bilaterally, predominately on the right side. (Tr. 282). He continued to have positive Tinel's bilaterally. On low back exam, he had pain on hyperextension, concomitant lateral bending and rotation.

Recent MRI revealed right C3-4 disc herniation, and recent EMG/NCV studies indicated severe bilateral median nerve entrapment neuropathy.

Dr. Hodges' impression was progressive neck/upper extremity pain, bilateral carpal tunnel and C3-4 disc. He continued claimant's medications.

**(4) Consultative Examination by Dr. Kenneth A. Ritter, Jr. dated June 25, 2010**. Claimant complained of constant low back pain, posterior neck stiffness and locking on occasion, carpal tunnel syndrome and chronic anxiety. (Tr. 285). His medications included Norco as needed for pain, Xanax, Nexium, Celebrex and Advair as needed.

On examination, claimant was 5 feet 11 inches tall and weighed 193 pounds. (Tr. 286). He had normal gait and station, negative straight leg raises and normal range of motion in the extremities. (Tr. 286-87). He had a slightly positive Tinel's sign on the left. (Tr. 287). He had normal grip strength bilaterally.

Neurologically, claimant was intact, with normal DTRs, strength and sensation.

Dr. Ritter's impression was chronic low back pain without radiculopathy, complaints of episodic neck pain and stiffness, symptoms compatible with at least some degree of carpal tunnel syndrome, ongoing cigarette smoking and episodic asthma.

In the Medical Assessment of Ability to do Work-Related Activities (Physical), Dr. Ritter found that claimant could lift/carry 10 to 25 pounds occasionally and 10 to 20 pounds frequently.  (Tr. 288).  He determined that claimant had no limitations as to standing/walking and sitting.  He found that claimant could occasionally climb, stoop, kneel, crouch and crawl, and frequently balance.  He found no other limitations.  (Tr. 289).

**(5) Records from Dr. Hodges dated August 9, 2010 to June 17, 2011**.  On August 9, 2010, claimant continued with neck, bilateral shoulder/arm and back pain. (Tr. 311).  On examination, his neck range of motion continued to be restricted.  (Tr. 312).  He had significant tenderness in the trapezial levator groups and rhomboid musculature, and continued to have positive Tinel's in the wrists.  Low back exam revealed pain on extension, lateral bending and rotation.

Dr. Hodges' impression was a history of multilevel cervical spine radiculopathy with acute and chronic neck/shoulder/arm pain, carpal tunnel syndrome and a history of lumbar spine surgery. (Tr. 313). Dr. Hodges noted that claimant was applying for Social Security disability, and stated that "I do encourage him to do such and indeed feel he should be approved without question."[1]

On February 7, 2011, claimant continued to complain of muscle pain, neck pain, shoulder/arm pain, back pain, pain down the legs, and pain and stiffness in the joints. (Tr. 305). He also had headaches and limb weakness.

On low back examination, claimant had some flattening of the lumbar lordosis. (Tr. 306). He had some difficulty with squatting maneuver.

Dr. Hodges' impression was a history of lumbar fusion with persistent mechanical/arachnoidopathy. He noted that claimant was applying for Social Security disability, and stated that "I do think this is appropriate." (Tr. 307).

In the Medical Source Statement dated June 17, 2011, Dr. Hodges checked that claimant could lift/carry up to 10 pounds frequently and 20 pounds

---

[1] This legal conclusion by Dr. Hodges is not binding on the Court. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (*citing* 20 C.F.R. § 1527(e)(1)) (among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work." These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner.").

occasionally. (Tr. 316). He checked that claimant could sit for 30 minutes and stand/walk for one hour without interruption, and could sit and stand/walk a total of one hour over an eight-hour period. He wrote that claimant would have to take unscheduled breaks during the workday due to pain and would have to miss work or leave work early at least three times a month. (Tr. 317). He stated that claimant would have side effects of drowsiness/sedation from medication.

**(6) Claimant's Administrative Hearing Testimony**. At the hearing on July 11, 2011, claimant testified that he had worked as a carpenter and construction foreman in the oil field. (Tr. 49-50). He stated that he had hurt his lower back and neck on the job in November, 2001. (Tr. 54). He reported that he had returned to work in about 2005 as an oilfield construction foreman. (Tr. 56).

Regarding complaints, claimant testified that he had stopped working in April, 2010, due to pain. (Tr. 52, 57). He reported that he still had back pain and neck problems all day long, and headaches two to three times a day. (Tr. 57, 60-61). Additionally, he stated that he had numbness in his hands and dropped things. (Tr. 57, 62).

Claimant reported that he got two to four hours of relief from his pain medications.[2]  (Tr. 51, 61-62).  He stated that Dr. Hodges had recommended surgery for his neck and carpal tunnel on both arms, but he could not afford it. (Tr. 63).  He testified that he would have the surgery if he had the money.

As to activities, claimant reported that he spent most of his time sitting in a recliner or lying down on the sofa watching TV.  (Tr. 48).  He testified that he visited with friends and relatives once or twice a week, and went grocery shopping with his wife.  (Tr. 48-49, 63).

Regarding restrictions, claimant confirmed that he could lift 11 to 20 pounds occasionally and 10 pounds frequently.  (Tr. 49, 53).  He stated that he could stand, walk or sit between 30 minutes to an hour, and needed to change positions every 30 minutes to an hour.  (Tr. 53, 64-65).  He reported that he had three to four bad days a week where he was pretty much restricted.  (Tr. 54).

**(7) Administrative Hearing Testimony of Dr. Earl F. Beard, Medical Expert ("ME")**.[3]  Dr. Beard, who specialized in internal medicine and cardiology,

---

[2]Claimant's Medications list dated June 28, 2011, indicates that he takes Lortab 10/500 four times daily, Xanax three times daily, Mobic once daily, Nexium once daily, Advair twice daily and Combivent as needed.  (Tr. 219).

[3]Dr. John Lonowski also testified as a medical expert on claimant's alleged mental impairment, which is not at issue on appeal.  (Tr. 38-47).

testified that the objective evidence did not show that claimant met or equaled any of the listings. (Tr. 28, 32). However, he opined that claimant's continued low back pain would limit him to light physical activity with a sit/stand option and a limitation to lifting 10 pounds. (Tr. 30).

Additionally, Dr. Beard testified that claimant's episodic asthma would restrict him from working in an environment contaminated with irritants and might possibly result in some unscheduled absences. Further, he stated that he could not tell from the record how much limitation claimant had as to muscular grip and fine and dextrous motions, but noted that most carpal tunnel syndromes were correctable. In conclusion, he found that claimant might have some limitation in motion in the hands due to carpal tunnel syndrome.

**(8) Administrative Hearing Testimony of Leonard Francois, Vocational Expert ("VE")**. The ALJ posed a hypothetical in which he asked Mr. Francois to assume a claimant who alleged disability at age 34 and was currently 35; had a 10th-grade education; had a past relevant work history as indicated in the file; and had limitations to lifting/carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing and walking with a sit/stand option after 30 minutes to one hour in each position before having to change positions; working in a clean environment free from odors, dust, gases or poor ventilation; mild restriction of

activities of daily living; mild restriction in attention, concentration and pace; mild restriction in social functioning, and no episodes of decompensation. (Tr. 67-68). In response, the VE testified that such claimant would not be able to do his past relevant work. However, Mr. Francois opined that claimant could work as an airline security guard, of which there were 1,597 jobs statewide and 98,841 nationally; surveillance system monitor, of which there were 204 jobs statewide and 16,389 nationally, and order caller, of which there were 1,223 jobs statewide and 96,041 nationally. (Tr. 69-70).

When the ALJ asked whether a person would be employable if he could not put in a full eight-hour day, 40-hour work week and perform the minimal production standards for that job, the vocational expert testified that he would not. (Tr. 72-73).

When claimant's attorney asked whether a claimant could perform the identified jobs if he were required to sit for 30 minutes, stand for 30 minutes, then sit back down for 30 minutes, the VE opined that he would not be employable in those jobs. (Tr. 75-76). Claimant's counsel then inquired whether a claimant who was unable to pay full attention to the job for 15 percent of the workday due to pain or medications, or was unable to sit or stand in any combination for eight

11

hours, would have a difficult time maintaining employment. (Tr. 77-78). In response, Mr. Francois testified that he would. (Tr. 78).

**(9) The ALJ's findings**. Claimant argues that the ALJ erred: (1) in failing to consider, discuss, or assign any weight to the treating source medical opinions of Dr. Hodges in violation of 20 C.F.R. §§ 404.1527(c), SSR 96-2p, and SSR 96-5p; (2) in failing to properly weigh and evaluate the medical opinions of Drs. Ritter and Beard; specifically, in concurring with and giving weight to both opinions and yet failing to adopt functional limitations from each doctor and not providing any rationale for his evidentiary choices in violation of 20 C.F.R. §§ 404.1527(c), SSR 96-2p, and SSR 96-5p; (3) in failing to properly and explicitly evaluate whether he met or equaled Listing 1.04(B) (spinal arachnoiditis),[4] and (4) failing to include in the RFC assessment any manipulative limitations despite finding that claimant's bilateral carpal tunnel syndrome was a severe impairment

---

[4]Section 1.04 provides: "[d]isorders of the spine: (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:*** B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." 20 C.F.R. Subpart P, Appendix 1, § 1.04. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. (emphasis in original). *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990). Here, there is no evidence of compromise of a nerve root or the spinal cord in this case as required by § 1.04. (Tr. 268).

and medical evidence demonstrating severe bilateral median nerve entrapment, and in additionally failing to include any postural limitations as found by Drs. Ritter, Hodges and Beard. Because the ALJ failed to apply the proper analysis for rejecting the treating physician's opinion, and failed to include claimant's manipulative limitations due to carpal tunnel syndrome in his RFC assessment, the undersigned recommends that this matter be **REMANDED**.

First, claimant argues that the ALJ failing to consider, discuss, or assign any weight to the treating source medical opinions of Dr. Hodges.

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).

A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton,* 209 F.3d at 455 (*citing* 20 C.F.R. § 404.1527(d)(2)).

Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Id*.; *Greenspan*, 38 F.3d at 237.

Claimant argues that the ALJ failed to properly evaluate the treating source medical opinion of Dr. Hodges under 20 C.F.R. §§ 404.1527(c), SSR 96-2p, and SSR 96-5p. While the ALJ summarized most of Dr. Hodges' records, he did not address the Medical Source Statement or assign any weight to Dr. Hodges' opinions. (Tr. 15-16). Instead, he concurred with the opinion of the one-time consultative examiner, Dr. Ritter, and gave "great weight" to the opinion of the non-examining, non-orthopedic medical expert, Dr. Beard. (Tr. 15-16).

It is well established that the opinion of an examining physician should be accorded greater weight than the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *Newton*, 209 F.3d at 455; *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan*, 38 F.3d at 237. Additionally, a specialist's opinion is accorded greater weight than that of a non-specialist. *Newton*, 209 F.3d at 455. Because the ALJ failed to assign any weight whatsoever to the opinion of the treating orthopedic specialist, Dr. Hodges, I find that he committed error.

Further, the ALJ did not follow the factors set forth by the Fifth Circuit in weighing the treating physician's opinion.  The Fifth Circuit has held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." (emphasis in original).  *Newton*, 209 F.3d at 453.  In *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), the court held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization.  *Id*. at 621 (*citing Newton,* 209 F.3d at 456).

Here, the ALJ failed to consider the factors outlined in *Myers*.  Additionally, he failed analyze Dr. Hodges' Medical Source Statement.  The expert opinion of a treating physician as to the existence of a disability is *binding* on the fact-finder "*unless contradicted by substantial evidence to the contrary*." (emphasis added).  *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (*quoting Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978)).

In the Medical Source Statement dated June 17, 2011, Dr. Hodges checked that claimant could lift/carry up to 10 pounds frequently and 20 pounds occasionally. (Tr. 316). He checked that claimant could sit for 30 minutes and stand/walk for one hour without interruption, and could sit and stand/walk a total of one hour over an eight-hour period. He also wrote that claimant would have to take unscheduled breaks during the workday due to pain and would have to miss work or leave work early at least three times a month. (Tr. 317).

Here, the ALJ failed to address Dr. Hodges' Medical Source Statement. Instead, he relied on the opinion of Dr. Ritter, who saw claimant one year prior to the time that Dr. Hodges rendered this statement, and Dr. Beard, who was a non-examining physician and a non-orthopedic specialist. This constitutes error.

Additionally, the ALJ failed to address Dr. Hodges' finding that claimant would have side effects of drowsiness/sedation from medication. The record reflects that claimant was taking Xanax and Lortab, which are narcotic medicines designed for the relief of moderate-to-severe pain. (Tr. 219)

Under the regulations, the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms." *Crowley v. Apfel*, 197 F.3d

16

194, 199 (5th Cir. 1999) (citing 20 C.F.R. § 404.1529(c)(3)(iv)).  The ALJ failed to do so in this case, which constitutes error.

Finally, claimant argues that the ALJ erred in failing to include any manipulative limitations in the RFC assessment despite evidence demonstrating his bilateral carpal tunnel syndrome and medical severe bilateral median nerve entrapment.

The NCV Report showed that claimant had bilateral nerve entrapment neuropathy at the level of the carpal tunnel.  (Tr. 279).  Dr. Hodges determined that this bilateral median nerve entrapment neuropathy was *severe*.  (emphasis added).  (Tr. 283).  Additionally, both Drs. Hodges and Ritter found that claimant had positive Tinel's and carpal tunnel syndrome.  (Tr. 282-83, 287, 312-13).

Here, the ALJ failed to include claimant's carpal tunnel syndrome either in his hypotheticals to the vocational expert or the RFC assessment.  Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions, a determination of non-disability based on such a defective question cannot stand.  *Boyd v. Apfel*, 239

F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Here, despite objective testing showing that carpal tunnel syndrome, the ALJ failed to include any limitations due to this impairment in either his hypotheticals to the vocational expert or his RFC assessment. This constitutes error.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to apply the proper standard for weighing the treating physician's opinion, consider claimant's limitations due to carpal tunnel syndrome and back problems in the Residual Functional Capacity Assessment, and pose a proper hypothetical including claimant's limitations to a vocational expert, if needed. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). *See, Richard*

*v. Sullivan*, 955 F.2d 354, 356 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996);**

*U.S. EX REL. STEURY V. CARDINAL HEALTH, INC.*, **735 F.3D 202, 205, N. 2 (5TH Cir. 2013).**

    April 3, 2014, Lafayette, Louisiana.

*[signature: C. Michael Hill]*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE